Edward M. BEAZLEY, Individually and on behalf of all other persons similarly situated

v.

Claude ARMOUR, Commissioner, Tennessee Dept. of Safety, Individually and in his official capacity, et al.

No. 74–51–NA–CV.

United States District Court, M. D. Tennessee, Nashville Division.

March 17, 1976.

Gordon Bonnyman, Legal Services of Nashville, Nashville, Tenn., for plaintiff.

Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Tenn., for defendants.

Before PHILLIPS, Chief Circuit Judge, MILLER, Circuit Judge, and MORTON, District Judge.

PER CURIAM.

The original named plaintiff, Edward M. Beazley, and two named plaintiff-intervenors bring this action on behalf of themselves and others similarly situated to have this three-judge court declare void and enjoin the enforcement of two sections of the Tennessee Financial Responsibility Law, T.C.A. §§ 59–1204 and 1212(e). In addition, they ask the court to grant appropriate injunctive relief protecting them from certain alleged unconstitutional administrative policies and practices of the defendants.

I

On April 17, 1972, plaintiff Beazley, a resident of Nashville, Tennessee, was involved in an accident within the city limits of Nashville when two other automobiles collided on a public thoroughfare and one of the vehicles was impelled into Beazley's automobile. It appears that at the time of the accident, the Beazley vehicle was not moving, and was situated either at the shoulder of the road or at a point entirely off the road.

On June 30, 1972, the Tennessee Department of Safety (the Department) mailed a notice to plaintiff Beazley at the address which appeared on his motor vehicle operator's license, informing him that he was required to report the motor vehicle accident in which he had been involved under the provisions of Tennessee Code Annotated § 59–1203. Beazley had moved from the address to which the notice was mailed and consequently the notice was returned to the defendant Department undelivered.

On August 25, 1972, the Department mailed a second notice to Beazley at the

same address, this time informing him that his driver's license privileges would be revoked as of October 25, 1972, unless he complied with the security provisions of the Financial Responsibility Law or applied for a hearing before the Commissioner of Safety. This notice was also returned undelivered. Apparently, no further efforts were made by the Department to notify Beazley of the imminent revocation of his driving privileges.

Plaintiff Beazley's driving privileges were indeed subsequently revoked by the Department, and on December 13, 1972, one of its agents contacted Beazley personally and demanded that he surrender his driver's license and motor vehicle registration under threat of arrest and confinement. Beazley complied with the agent's demands and was informed that his privileges would be reinstated upon presentation of proof of financial responsibility.

On February 5, 1973, final judgment was entered in the General Sessions Court for Davidson County, Tennessee, in favor of plaintiff Beazley and against the driver of one of the other vehicles for damages arising out of the April 17, 1972 accident. On February 13, 1973, Beazley obtained a "release in full" executed by the owner of the other vehicle and discharging Beazley of any liability arising from the accident. The judgment against one driver and release from the other entitled plaintiff Beazley to restoration of his revoked privileges under T.C.A. § 59–1212(b) and (d), but subsection (e) of § 59–1212 still required him to provide proof of insurance coverage. He did so, but unforeseen circumstances resulted in his failure to continue payments on his insurance premiums, and on August 31, 1973, his insurer notified the Department of Safety that Beazley's coverage would expire on September 12, 1973.

On October 26, 1973, the Department notified plaintiff Beazley by letter from defendant Thomas Smothers, Supervisor of its Financial Responsibility Section, that his driving privileges would once again be revoked on November 5, 1973, unless he submitted proof of financial responsibility prior to that date. Smothers' letter contained no mention of any right that plaintiff might have to administrative review of the Department's decision. Beazley failed to provide such proof and on January 16, 1974, he received another notice of revocation, advising him that his privileges had been revoked as of November 5, 1973, and that unless he turned in his driver's license and vehicle registration by January 28, 1974, he would be subject to arrest and imprisonment. Plaintiff Beazley's attorney requested a hearing on the issue of fault, but was advised by the Department that such a hearing would be pointless since under the Financial Responsibility Law, fault was not a factor in applying the statutory requirement of future proof of financial responsibility.

On January 29, 1974, plaintiff Beazley filed the present action in the United States District Court for the Middle District of Tennessee, concomitantly seeking and receiving a Temporary Restraining Order enjoining the enforcement of the statute.

## II

Plaintiff and plaintiff-intervenors (hereinafter, plaintiffs) challenge the constitutionality of T.C.A. § 59–1204 on the basis of its failure to provide a pre-revocation hearing for the purpose of determining whether there exists a "reasonable possibility" that the subject driver may be found liable for damages as a result of an automobile accident in which he has been involved. That section provides as follows:

59–1204. Security required following accident unless evidence of insurance—Suspension for failure to deposit security. —The commissioner shall, within sixty (60) days after receipt of the report of a motor vehicle accident occurring anywhere in this state which has resulted in bodily injury, or death, or damage to the property of any one (1) person in excess of two hundred dollars ($200), revoke the license and all registrations of each operator and owner of a motor vehicle in any manner involved in such accident, and in case of a nonresident, the privilege of

operating a motor vehicle within the state and of the use within this state of any motor vehicle owned by him, unless such operator, owner, or both shall deposit security in a sum which shall be sufficient, in the judgment of the commissioner, and in no event less than five hundred dollars ($500) to satisfy any judgment or judgments for damages resulting from such accident which may be recovered against such operator, owner or both, and unless such operator and owner shall give and maintain proof of financial responsibility; provided, notice of such revocation shall be sent by United States mail to the last known address of such operator and owner not less than ten (10) days prior to the effective date of such revocation and shall state the amount required as security and the requirement of giving proof of financial responsibility.

In support of their position plaintiffs rely on the Supreme Court's holding in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and the decision of the Tennessee Supreme Court in *Veach v. State,* 491 S.W.2d 81 (Tenn.1973).

In *Bell,* the Court ruled that under a Georgia financial responsibility law very similar to that of Tennessee, before the state could suspend the petitioner's license and registration, procedural due process required a determination as to whether there was a reasonable possibility of a judgment being rendered against him as a result of an accident. The Court rejected the state court holding that "[f]ault or innocence are completely irrelevant factors" in the statutory scheme, pointing to provisions in the act which forestalled suspension of privileges if the licensee obtained a prior release or an adjudication of nonliability. Similarly, the Court noted that under the act "[e]ven after suspension has been declared, a release from liability or an adjudication of nonliability will lift the suspension." 402 U.S. at 541, 91 S.Ct. at 1590. Though the provisions of the Tennessee act are not identical to those of the Georgia statute scrutinized by the Court in *Bell,* we believe Section 59–1212 [1] is sufficiently similar, at least with respect to the last-quoted passage above, to bring it within the purview of the "fault-oriented scheme" discussed in *Bell,* for which a prior hearing on the question of the licensee's possible liability was mandated. Thus, § 59–1204 in its present form, falls short of the constitutional requirements enunciated in *Bell,* inasmuch as it makes no provision for a pre-suspension or pre-revocation hearing to determine fault.

---

1. Section 59–1212 provides as follows:

59–1212. Restoration of revoked privileges, when.—The commissioner shall restore any and all revoked privileges when:

(a) One (1) year from the date of the accident has expired and no court action has been brought as a result of the accident or when the revoked party has deposited security and given proof of financial responsibility in any way as authorized by this chapter.

(b) A court has rendered a judgment which believes the revoked person of any liability for the accident for which failure to deposit security and give proof of financial responsibility caused revocation.

(c) A court has rendered a judgment and said judgment is paid, payment of which relieves the revoked party of any further liability for the accident for which failure to deposit security and give proof of financial responsibility caused revocation.

(d) The owner or operator files with the commissioner notarized releases executed by all parties who have previously filed claims with the department as a result of the accident.

(e) In addition to the requirements of subsections (b), (c), and (d) of this section for restoration of privileges, the revoked person shall also give and maintain proof of financial responsibility as a condition to restoration of such privileges.

Provided, however, that at any time after three (3) years from the date of revocation the department may, upon its own discretion, or upon request of the person required to furnish proof of financial responsibility, release the requirement of such proof, provided the records of the department establish that the person, during the preceding three (3) year period, has not been convicted of any offense authorizing or requiring the suspension or revocation of a license by the department and has not suffered suspension, revocation, prohibition, or cancellation of license upon order of the department or a court arising from a conviction of a violation of the law, and upon paying twenty-five dollars ($25.00). Provided further, however, that this paragraph shall not apply in any case where there is an unsatisfied judgment based on a motor vehicle accident.

The foregoing interpretation of the Ten-. nessee Act finds support in the Tennessee Supreme Court's ruling in *Veach v. State, supra.* In that case, the court held that the conviction of a motorist under the Tennessee Financial Responsibility Law was invalid because the due process requirements laid down in *Bell v. Burson* had not been observed. Thus while the court did not pass on the specific issue of the constitutionality of § 59–1204 (and in fact expressly refused to do so on petition to rehear, 491 S.W.2d at 83), the applicability of the *Bell* rationale to the Tennessee Act was affirmed.

Apparently recognizing the statute's constitutional deficiencies subsequent to the *Bell* decision, the defendant Commissioner of Safety issued a regulation—denominated Regulation No. 2—on June 9, 1971. The text of that regulation reads as follows:

*Section 1.* That at all administrative hearings conducted pursuant to a request under the provisions of Section 59–1202, T.C.A., the hearing officer designated by the Commissioner shall, in addition to all other matters required by law to be determined, ascertain whether there is a reasonable possibility of a judgment or judgments being rendered against the licensee.

*Section 2.* This regulation shall apply from and after May 24, 1971, to those hearings requested within sixty (60) days from the date of notice of revocation where a period of sixty (60) days has expired from the date of the revocation and no hearing has been requested.

The defendants maintain that the foregoing regulation is sufficient to bring the Tennessee act into line with the standards enunciated in *Bell.* The difficulty with defendants' reasoning, however, is that Regulation No. 2 is in direct and irreconcilable conflict with the express provisions of T.C.A. § 59–1204, which in essence make revocation of an uninsured motorist's license automatic within sixty days of the Department's receipt of the accident report. The principle is well-settled under Tennessee law that administrative regulations which contravene legislative pronouncements on the same subject are a nullity. As the Tennessee Supreme Court declared in *Tasco Dev. and Bldg. Corp. v. Long,* 212 Tenn. 96, 100, 368 S.W.2d 65, 67 (1963),

Of course, an administrative body of this kind which is given legislative power to make rules and regulations does not have the power to make a rule or regulation which is inconsistent with the constitutional provision or other law on the subject, and it does not include the authority to enact laws, or to make rules affecting or creating substantive rights.

See also *Polk County v. State Board of Equalization,* 484 S.W.2d 49, 57 (Tenn.App. 1972).

The Tennessee rule parallels that generally applied by federal courts in cases where administrative regulations inconsistent with Congressional enactments are called into question. The rationale underlying the invalidation of such regulations was detailed by the Supreme Court in *Koshland v. Helvering,* 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268 (1936), and later applied by the Sixth Circuit in *United States v. Abrams,* 197 F.2d 803 (6th Cir. 1952). The reasoning in *Koshland* is no less applicable when the particular statute and regulation at issue are the product of state rather than federal governmental bodies.

Thus defendants' contention that the unconstitutional provisions of T.C.A. § 59–1204 have been cured by the promulgation of Regulation No. 2 must be rejected. That section in its present form denies persons in plaintiffs' position the right to a pre-revocation hearing on the question of potential liability. Such a practice is inconsistent with concepts of procedural due process and cannot be permitted to stand. *Bell v. Burson, supra.*

### III

Plaintiffs also challenge § 59–1212(e) of the act, claiming that it violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and that it has a chilling effect upon the due process rights of persons in plaintiffs' posi-

tion who seek to obtain redress in the courts.

T.C.A. § 59–1212 sets forth the means by which revoked driving privileges may be restored.[2] Subsection (a) permits restoration of privileges after a period of one year during which no court action arising from the accident has been brought. Subsection (b) provides for a return of privileges when the revoked driver obtains a judgment relieving him of any liability in connection with the accident. Under subsection (c) a driver's privileges may be restored when he fully satisfies any judgment rendered as a result of the accident thereby relieving himself of any further liability. Subsection (d) allows a driver to reclaim his privileges upon obtaining releases from all other parties to the accident.

Subsection (e) imposes the additional requirement on drivers covered by subsections (b), (c), and (d) that they file and maintain proof of financial responsibility for a period of three years. No similar requirement for drivers covered by subsection (a) appears on the face of the statute.

Plaintiffs argue that no rational basis exists for making such a distinction between subsection (a) drivers and those covered by (b), (c), and (d). They suggest that in at least some cases, persons will meet the qualifications of subsection (a) by virtue of the failure of other parties to file suit within a year for the very reason that they are so financially irresponsible that the other parties recognize the futility of trying to collect a judgment from them. On the other hand, plaintiffs contend, all motorists falling under subsections (b), (c), and (d) would have demonstrated conclusively either that they are safe drivers, as evidenced by their vindication in court, or that they are sufficiently responsible financially to have satisfied the claims of the other parties to their accidents. Therefore, plaintiffs reason, the act's arbitrary classifications deny persons such as themselves their rights under the equal protection clause of the Fourteenth Amendment.

Plaintiffs further urge that the exemption of subsection (a) motorists from proof of future financial responsibility has a chilling effect on the exercise of due process rights in that it discourages resort to the courts by persons with arguably meritorious claims, but who fear that court action will result in the obligation to furnish continuing evidence of financial responsibility.

Defendants contend that plaintiffs' arguments are premised on a misreading of section 1212, and that the correct interpretation was rendered in a 1962 Opinion of the Attorney General. In response to a query by the Department of Safety, the Attorney General opined that the financial responsibility requirements of § 1212(e) applied to subsection (a) drivers as well as those falling under subsections (b), (c), and (d). Relying on this interpretation, the Department has consistently followed the practice since 1962 of requiring proof of financial responsibility from all uninsured motorists to whom privileges are restored under § 1212, whether they have been involved in court action arising from their accident or not. Thus, defendants argue, plaintiffs' constitutional challenges are without merit, since there is in fact no discrimination or inequality in the Department's enforcement of the act.

To accept defendants' reasoning, however, we must first accept the assumption implicit in their analysis that the statute is sufficiently vague to require administrative interpretation. This we cannot do. A careful reading of section 1212 reveals no ambiguity whatever as to which categories of motorists must file proof of financial responsibility. Subsection (b), (c), and (d) motorists are expressly subjected to that requirement in subsection (e). Subsection (a) clearly refers to the proof of financial responsibility requirement in the disjunctive:

> The commissioner shall restore any and all revoked privileges when:
> (a) One (1) year from the date of the accident has expired and no court action has been brought as a result of the accident *or* when the revoked party has de-

**2.** The text of T.C.A. § 59–1212 appears in footnote 1.

posited security and given proof of financial responsibility in any way as authorized by this chapter.

(emphasis supplied)

■ The language of section 1212, then, is quite precise in its exemption of subsection (a) motorists from the financial responsibility requirement. It is axiomatic that administrative construction of legislative enactments becomes relevant only where the legislation itself is vague or ambiguous. *City of Nashville v. State Board of Equalization,* 210 Tenn. 587, 360 S.W.2d 458 (1962); *City of Nashville v. Gibson County,* 201 Tenn. 216, 298 S.W.2d 540 (1957). See also *Koshland v. Helvering, supra,* 298 U.S. at 447, 56 S.Ct. 767.

■ In construing section 1212 as it did, the Attorney General's Opinion sought to alter the very substance of the section's scheme, completely eliminating an exemption that the legislature had articulated in clear and precise terms. Thus our analysis of the deficiencies of the Department's Regulation No. 2, discussed above, is applicable with equal force to the Attorney General's 1962 Opinion. The Opinion represents an attempt to amend a legislative enactment by administrative fiat, and as such can be given no operative effect. *Tasco Dev. and Bldg. Corp. v. Long, supra.*

■ The unambiguous language of T.C.A. § 1212 clearly delineates a system wherein motorists are treated differently without any rational basis for the differentiation, the inevitable effect of which is to discourage vindication of rights by application to the courts. Such a statutory scheme constitutes an impermissible intrusion upon constitutional guarantees and cannot be allowed to stand. *Chicago & N. W. R. R. v. Nye Schneider Fowler Co.,* 260 U.S. 35, 43 S.Ct. 55, 67 L.Ed. 115 (1922); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688, 694 (1975).

**IV**

Plaintiffs challenge defendants' notice of revocation procedures on two grounds: (1) that the pre-revocation notice form used by defendants prior to November, 1975, denied recipients due process of law in that it did not adequately apprise them of their right to a pre-revocation hearing; and (2) that the present method of serving revocation notices is inadequate to satisfy due process guarantees.

■ As to plaintiffs' first contention, we conclude that the class represented by plaintiffs does not encompass individuals who received the allegedly defective notices. The gravamen of plaintiffs' second contention is that due to improper service procedures they received no pre-revocation notice at all. Thus plaintiffs are not in a position to challenge the sufficiency of the contents of the written notices formerly used by the Department.

■ Rule 23 of the Federal Rules of Civil Procedure clearly provides that plaintiffs must be members of the class which they seek to represent. See generally, Wright and Miller, Federal Practice and Procedure § 1761; 2 Barron & Holtzoff, Federal Practice and Procedure § 567; 3B Moore's Federal Practice ¶ 23.04. Absent such membership, they are without standing to bring suit in behalf of the class. *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Newman v. Avco Corp.-Aerospace Str. Div., Nashville, Tenn.,* 313 F.Supp. 1069 (M.D.Tenn.1970). See also *Garrett v. City of Hamtramck,* 503 F.2d 1236, 1245 (6th Cir. 1974). Accordingly, plaintiffs' first contention must be dismissed.[3]

■ Plaintiffs' second contention stems from the fact, as mentioned above, that they received no initial notice of impending revocation of their driving privileges. De-

---

3. It should be noted that the notice form complained of by plaintiffs was expressly invalidated by the Chancery Court for Davidson County, Tennessee, in an order issued on August 28, 1975, in the case of *Edwards v. Plummer,* No. A 5275. Thus the only real issue of substance presented by plaintiffs' allegation is whether new notices should be mailed to all licensees who received the constitutionally defective notices prior to November, 1975. As suggested in the text, *supra,* plaintiffs have no standing to raise that issue.

**510**

fendants assert that in each case such notices were mailed to plaintiffs at their last known address as required by T.C.A. § 59–1204. Defendants admit, however, that at least in plaintiff Beazley's case, the notice was returned to the Department undelivered. The question arises, then, whether defendants have failed to satisfy the requirements of due process in neglecting to take additional steps to notify plaintiff Beazley when it was reasonably apparent that he had not received actual notice. Defendants maintain that, consistent with the standard enunciated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), they have employed a means of notification "which is reasonably calculated under all the circumstances to inform the parties of the pending action . . . ." In support of their position they point out that under T.C.A. § 59–708(d) a licensee is required to notify the Department of Safety in writing within ten days of any change of address.[4] Failure to do so is made a misdemeanor under T.C.A. § 59–718. Thus, defendants argue, the licensee himself is responsible for maintaining an updated record of his current address with the Department, and any notice sent to the last address furnished by him should satisfy due process requirements. If the licensee fails to receive the notice as a result of his own neglect to notify the Department of an address change, defendants contend, he cannot be heard to complain.

We are inclined to agree with defendants. Although there may exist other reasons for a licensee's failure to receive a pre-revocation notice, the evidence in this record does not suggest that anything other than plaintiffs' own neglect to notify the Department of their address changes caused the nonreceipt of the notices in the present case. Given that factual setting, we need not decide the closer question of what due process requires when a licensee's failure to receive pre-revocation notice is due to circumstances beyond his control. Accordingly, we hold that the method for serving notice of revocation set forth in T.C.A.

§ 59–1204, as applied to the instant plaintiffs, is sufficient to satisfy due process requirements. See *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174–77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Grunin v. International House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975).

An appropriate order will be entered.

---

4. This requirement is also clearly printed on the back of every Tennessee driver's license.