**HOLIDAY INNS, INC.,**
**Plaintiff-Appellee,**

**v.**

**Martha B. OLSEN, Commissioner of Revenue, Defendant-Appellant.**

Supreme Court of Tennessee,
at Jackson.

June 24, 1985.

Charles L. Lewis, Deputy Atty. Gen., Nashville, for defendant-appellant; W.J. Michael Cody, Atty. Gen. and Reporter, Memphis, of counsel.

Paul J. Hartman, Nashville, Lewis R. Donelson, Charles T. Tuggle, Jr., William H.D. Fones, Jr., Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for plaintiff-appellee.

## OPINION

TATUM, Special Justice.

This is an excise tax case concerning state taxation of Holiday Inns, Inc., a multi-state and international business having its commercial domicile in Tennessee. The question presented is whether the interest earned by Holiday Inns from short-term investments of its working capital is non-business income, allocable entirely to Tennessee as the business domicile, or business income which must be apportioned among the several states in which plaintiff does business. The Chancellor held that this was business income which must be apportioned and we affirm.

The plaintiff, Holiday Inns, paid under protest the excise taxes in dispute for the 1978, 1979, and 1980 tax years, in the amount of $1,121,660.00, including interest and minor adjustments, and timely filed this suit for refund. Both parties filed motions for summary judgment, supported by affidavits, and a stipulation as to the amount in dispute. The Chancellor granted the plaintiff's motion for summary judgment with respect to the treatment of income from working capital as business income and granted the Commissioner of Revenue's motion with respect to certain constitutional issues which have been rendered moot by our affirmance of the judgment in favor of the plaintiff on the merits of the case.

There are no relevant factual disputes. The plaintiff-appellee, Holiday Inns, Inc., is a corporation organized under Tennessee law and also has its commercial domicile in Tennessee. The plaintiff's primary business is the operation of hotels and restaurants, which plaintiff refers to as the "hospitality business." Plaintiff had business locations in and paid income or corporate excise taxes to a large number of states in the years 1978, 1979, and 1980.

The plaintiff's working capital was managed by its Corporate Cashier Department. Until needed, the working capital funds were placed in various money market instruments, the longest maturity of which was 1 year. Approximately $66,000,000.00 was invested in instruments with a maturity of 6 months or less, and approximately $13,000,000.00 was invested in instruments with a maturity of more than 6 months but not more than 1 year. Cash was drawn from the accounts whenever plaintiff's cash flow from operations or specific borrowings was insufficient to meet its needs for operations and capital investments. The amount of funds invested varied substantially from time to time depending on seasonal or other business fluctuations. The Department of Revenue, contending that the interest earned on working capital is a non-business earning, assessed plaintiff for a franchise and excise tax deficiency for the years 1978, 1979, and 1980.

The legal controversy in this case arose from the State's effort to implement Tennessee's Excise Tax Law on corporate earnings, codified at the time of the assessment as T.C.A. §§ 67–2701 *et seq.*[1] The excise tax is a privilege tax to which all corporations doing business in Tennessee are subject, at a rate of 6% of net earnings. The current law was adopted as Chapter 537, 1976 Public Acts, and is taken from a model act prepared by the National Conference of Commissioners on Uniform State Laws and known as the "Uniform Division of Income for Tax Purposes Act." (UDITPA). The purpose of the model act was to provide a uniform method of division of income for tax purposes among the several states.

There are three ways by which corporate income may be divided for excise tax purposes: (1) separate accounting;[2] (2) allocation; and, (3) apportionment. Allocation seeks to trace income to a source in a particular state and then attribute that income to that state. Apportionment takes all the corporate income and divides it among all jurisdictions where business is done, based on a formula that takes property, payroll, and sales into account.

■ The basic law is that interest, if regarded as non-business earnings, is allocated to the state of domicile. If the interest is regarded as business earnings, it is apportioned. T.C.A. § 67–4–810, § 67–4–811. Thus, since Holiday Inns is domiciled in Tennessee, if the interest from its working capital is business earnings, then only a fraction of it, by apportionment formula, is subject to Tennessee excise tax. On the other hand, if it is non-business earnings, then all the interest income is subject to the Tennessee excise tax, since it is all allocated to Tennessee. These methods of division of income prevail in all UDITPA States. UDITPA (T.C.A. § 67–4–804) pro-

vides definitions of business earnings or business income, as follows:

"67–4–804. Miscellaneous definitions.— (a) As used in this part, unless the context otherwise requires:

(1) 'Business earnings' means earnings arising from transactions and activity in the regular course of the taxpayer's trade or business and includes earnings from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations; . . .

(5) 'Nonbusiness earnings' means all earnings other than business earnings; . . .

(b) LEGISLATIVE INTENT. The definition of 'business earnings' and 'nonbusiness earnings' are the same as the definition of 'business income' and 'nonbusiness income' found in the Uniform Division of Income for Tax Purposes Act drafted by the National Conference of Commissioners on Uniform State Laws. It is the intent of the legislature that such terms shall be interpreted consistently with the intent of such drafters as indicated in the minutes of the conference and in similar documents."

The Department of Revenue has implemented the excise tax statute by promulgating an extensive set of allocation and apportionment rules and regulations. Rule 1320–6–1–.23(1) states in part that:

"(I)n essence, all earnings which arise from the conduct of the trade or business operations of a taxpayer are business earnings."

Part (c) of the rule provides:

"Interest income is business earnings when dealing in securities is a principal business activity of the taxpayer or when the acquisition, management, and disposition of the intangible with respect to which the interest was received *consti-*

---

1. The law has since been recodified as §§ 67–4–801 et seq. Since the codification makes no changes relevant to this case, we will refer to Tennessee Code provisions as now in effect.

2. Separate accounting seeks to view a company's operations in each state as separate entities and to determine the profits attributable to each state's separate portion of the business. The separate accounting method of taxation is not involved in the law applicable to this case.

*tute necessary parts of the regular business activity of the taxpayer."* (Emphasis supplied)

The rule then sets forth six examples of classification of interest, Example 5 being as follows:

"The taxpayer is engaged in a multistate manufacturing and selling business. The taxpayer usually has working capital and extra cash totaling $200,000.00 which it regularly invests in short-term interest bearing securities. The interest income is *nonbusiness* earnings." (Emphasis supplied)

■ If the rules and regulations promulgated by the Commissioner of Revenue are inconsistent with the statute, then they are void. *Tasco Developing and Building Corporation v. Long,* 212 Tenn. 96, 100, 368 S.W.2d 65, 67 (1963); *Beazley v. Armour,* 420 F.Supp. 503, 507 (M.D.Tenn.1976); T.C.A. § 67–1–102.

■ It is axiomatic that a purpose in enacting uniform laws is to achieve conformity, not uniqueness. While opinions by courts of sister states construing a uniform act are not binding upon this court, we are mindful that the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions. This court should strive to maintain the standardization of construction of uniform acts to carry out the legislative intent of uniformity. This does not mean that this court will blindly follow decisions of other states interpreting uniform acts but, this court will seriously consider the constructions given to comparable statutes in other jurisdictions and will espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state. *See generally State v. Jones,* 179 Tenn. 206, 164 S.W.2d 823, 825 (1942); *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 197 N.W.2d 448, 452 (1972).

In *Champion International Corp. v. Bureau of Revenue,* 88 N.M. 411, 540 P.2d 1300 (App.1975), the court, in interpreting UDITPA definitions of business income in a case factually similar to this one, said:

"Accordingly, we define the phrase 'transactions and activity in the regular course of the taxpayer's trade or business' in § 72–15A–17(A) as:

Business deals and the performance of a specific function in the normal, typical, customary or accustomed policy or procedure of the taxpayer's trade or business.

Cf. *Western Natural Gas Company v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968).

(a) *Interest Income*

The tax consultant for Champion testified that interest income was derived from capital earned in the business. Rather than have a large cash balance in the bank, Champion purchased short-term investments and highly liquid assets from which interest income was derived. This was a specific function of Champion. The money from these short-term investments was needed for future business activity. It was usual and customary in Champion's business to follow this practice, whenever there was enough money or business income that was not immediately needed in the business.

Champion contends that the determining factor is the nature of the transaction from which the interest income was derived, and its relationship to Champion's business. The interest income was derived from investments. Champion argues that this is not 'business income' because Champion is not in the investment business.

We disagree. Champion's representative testified that a normal and customary practice by Champion was to invest excess capital, not needed for business purposes, in short-term securities. Following our definition, supra, this was a specific function done in the regular course of Champion's business. Therefore, Champion's investment income is 'business income'."

In *Sperry and Hutchinson Co. v. Department of Revenue,* 270 Or. 329, 527 P.2d 729, 731 (1974), the Supreme Court of

Oregon held that interest on short-term securities purchased with operating capital was business income because it arose "from transactions and activities in the regular course of the taxpayer's trade or business."

In *Cin., N.O. and T.P. Railway v. Kentucky Department of Revenue*, 684 S.W.2d 303, 305 (Ky.App.1984), the court followed the reasoning that income from short-term securities purchased with operating capital is business income. The court said:

"The appellants invest in short-term securities from revenue they receive in the railroad business. They claim that part, if not all, of income from these investments is non-business and non-taxable in Kentucky. KRS 141.120(1)(a) defines business income as follows:

... income arising from transactions and activity in the regular course of a trade or business of the taxpayer and includes income from tangible and intangible property if the acquisition, management, or disposition of the property constitutes integral parts of the taxpayer's regular trade or business operations.

The appellants argue that they are in the railroad business, not the securities business, but the statute does not limit business income to the income from taxpayers' trade. Appellants' investments are an integral part of their regular business operation. *See Square D Company v. Kentucky Board of Tax Appeals*, Ky., 415 S.W.2d 594 (1967); Annot., 8 A.L.R. 4th 934 (1981). On this issue, we affirm the trial court's judgment."

The rationale of these cases is overwhelmingly supported in other jurisdictions where the courts have construed the UDITPA definition of business income. See *Montana Department of Revenue v. American Smelting and Refining Co.*, 173 Mont. 316, 567 P.2d 901 (1977), *app. dismissed*, 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978); *Atlantic Richfield Co. v. Colorado*, 198 Colo. 413, 601 P.2d 628 (1979); *Qualls v. Montgomery Ward and Company*, 266 Ark. 207, 585 S.W.2d 18, 8

ALR 4th 916 (1979); *Albany International Corporation v. Halperin*, 388 A.2d 902 (Me.1978).

During the years at issue, the plaintiff's working capital was managed by its Corporate Cashier Department which had a full-time staff of from 6 to 8 employees. The amount invested in working capital varied substantially from time to time dependent upon fluctuating needs. The principal and interest of these funds were expended in operating the plaintiff's hospitality business. The excess funds were placed in interest bearing securities instead of being kept in a non-interest bearing checking account. The interest earnings from these securities arose from transactions and activity in the regular course of the plaintiff's business and, the acquisition, management, and disposition of the funds constitute an integral part of the taxpayer's regular business operations. We agree with the foregoing authorities that the interest received from these short-term investments is "business earnings" as that term is defined by the Uniform Division of Income for Tax Purposes Act.

We are bolstered in our opinion not only by court decisions, but by regulations interpreting UDITPA in other states. The record reveals that an overwhelming majority of the 24 UDITPA states have adopted regulations interpreting the definition of "business earnings" so as to include interest income from short-term investments of working capital.

We reject the argument of the Commissioner of Revenue that the authorities herein mentioned were diverted from a sound interpretation of the Uniform Act by policies of the Multi-State Tax Commission (MTC). The Commissioner argues that the MTC has a wide impact because many states that have adopted UDITPA are members of the Multi-State Tax Compact which advocates the treatment of all of the company's earnings as business income. Regardless of the position taken by the MTC, we think that the majority of UDITPA states have correctly interpreted the statute through court decisions and admin-

istrative regulations. We hold that the Department of Revenue's "Example 5" *supra,* is erroneous and contrary to law.

This holding renders moot the plaintiff's constitutional issues involving due process and the commerce clause. We affirm the judgment of the Chancellor and adjudge costs against the Department of Revenue.

COOPER, C.J., and HARBISON, BROCK, DROWOTA, JJ., concur.