INDEPENDENT SOUTHERN BANC-SHARES, INC., Brownsville Bank, Farmers Union Bank, Union Savings Bank, Mid–South Bancshares, Inc., Tennessee Bank & Trust, Southern Financial, Inc. and Southern Financial Mortgage, Inc., Plaintiffs/Appellants,

v.

Joe B. HUDDLESTON, Commissioner of Revenue, State of Tennessee, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section.

April 26, 1995.

Application for Permission to Appeal Denied by Supreme Court Dec. 11, 1995.

C. Michael Norton, Janet P. Medlin, Wyatt, Tarrant & Combs, Nashville, for plaintiffs/appellants.

Charles W. Burson, Attorney General and Reporter, Joe C. Peel, Assistant Attorney General, Tax Division, Nashville, for defendant/appellee.

Frank N. Stockdale Carney, Katharine A. Jungkind, Evans & Petree, Memphis, Kathryn A. Stephenson, G. Michael Yopp and Robb S. Harvey, Tuke, Yopp & Sweeney, Nashville, for Amicus Curiae.

### OPINION

TODD, Presiding Judge.

The captioned plaintiffs have appealed from a Rule 54.02 partial final non-jury judgment of the Trial Court dismissing plaintiffs' suit for refund of excess corporate franchise taxes paid for fiscal year 1991. Issues for review are presented as follows:

Whether Tennessee Code Annotated, section 67–4–805(b)(2)(C)(ii), requires members of a unitary group to reduce their net operating loss carried forward from prior years, when to do so:

(1) is directly contrary to the legislative intent and rationale behind the unitary group concept;

(2) is directly contrary to the language of Tennessee Code Annotated, sections 67–4–805(b)(2)(C)(i) and 67–4–817(d);

(3) is a retroactive application of the law, with no clearly expressed legislative intent that it be applied retroactively;

(4) would require the unitary group to add back dividends between members for prior years when there was no valid legal basis for such a requirement in those years; and

(5) is, in effect, a double taxation of the unitary group taxpayer.

The facts are uncontroverted. Plaintiffs are members of a "unitary group" as defined in T.C.A. 67–4–804(a)(16). During the tax years 1990 and 1991, Independent Southern Bancshares, Inc. ("InSouth"), was a bank holding company. During the same period all other plaintiffs were wholly owned subsidiaries of InSouth except Mid–South Bancshares, Inc., 76% of the common stock of which was owned by InSouth, and except Tennessee Bank and Trust, 85% of the common stock of which was owned by InSouth.

For the taxable years 1989 and previous years, all of the plaintiffs filed separate franchise and excise returns reporting their "net earnings" and paying tax thereon. T.C.A. § 67–4–805(a)(1) defines "net earnings" as that reported for federal taxation subject to adjustments in subsection (b). Subsection (b)(2)(A) provides:

(2) There shall be subtracted from the federal taxable income:

(A) Dividends earned by a parent corporation from a subsidiary corporation where the parent owns 80% or more of the stock of the subsidiary.

Subsection (b)(2)(C)(i) provides:

Any net operating loss incurred for fiscal years ending on or after January 15, 1984, "net operating loss" being defined as the excess of allowable deductions over total income allocable to this state for the year of the loss, and which may be carried over and allowed in succeeding tax years until fully utilized in the next succeeding taxable year or years in which the taxpayer has net income, but in no case for more than fifteen (15) years after the taxable year in which the net operating loss occurs. For

fiscal years ending on or after July 15, 1990, in the case of a unitary business, as defined in § 67–4–804(a)(13), the net operating loss incurred in the current year shall be determined on a combined basis as specified in subdivision (a)(3) and, for tax years ending prior to July 15, 1990, any net operating loss incurred by a member of the unitary group which has been apportioned to Tennessee in a year prior to filing a combined return shall be allowed to the unitary group in succeeding tax years until fully utilized, but in no case more than seven (7) years after the taxable year in which the net operating loss occurs; . . . .

By Chapter 1087, Sec. 6, Public Acts of 1990, T.C.A. § 67–4–817 was amended to add subsection (d) as follows:

Financial institutions which form a unitary business as defined in § 67–4–804(a)(13) shall file a combined return and pay tax on all operations of the unitary business. This return shall include the net earnings of all members of the unitary group even if some of the members would not otherwise be subject to taxation under this part. Dividends and receipts between members of a unitary group shall be excluded from the return. [Acts 1976, ch. 537, § 53; 1978, ch. 600, §§ 1, 2; 1980, ch. 885, § 11; T.C.A., § 67–2728; Acts 1985, ch. 396, § 8; 1990, ch. 1087, § 6; 1991, ch. 37, § 7.]

The same addition was made to T.C.A. § 67–4–914.

In compliance with the quoted amendments, InSouth filed a 1990 combined tax return including the operations of the other plaintiffs. The correctness of this return was questioned because it did not comply with Administrative Rule 1320–6–1–.21 which required:

. . . (a) There shall be added to the net loss as determined for excise tax purposes, all nonbusiness earnings, all interest, dividends excluded from net earnings pursuant to Section 67–4–805 and any other income excluded from net earnings pursuant to Section 67–4–805.

*Southern Ry. v. Taylor,* 812 S.W.2d at 579. However, the dispute as to the 1990 return was resolved, and is not before this Court on this appeal.

On June 10, 1991, the Supreme Court filed its opinion in the case of *Southern Railway Company v. Dudley Taylor, Commissioner,* Tenn.1991, 812 S.W.2d 577, wherein it was held:

The effect of Rule 1320–6–1–.21(2)(a), which calls for dividends received from 80% subsidiaries to be added back to a net loss as determined for excise tax purposes, is to disallow the deduction. Thus, this rule is inconsistent with T.C.A. § 67–4–805(b)(2)(C).

This Court, in *Kellogg Co. v. Olsen,* 675 S.W.2d 707 (Tenn.1984), held that, given the unambiguous language of T.C.A. § 67–4–805(b)(2)(A) in providing a deduction for 100% of dividends received from 80% subsidiaries, the Commissioner acted in error in attempting to reduce that deduction by an amount equal to expenses incurred in earning such dividends. In that case, the Commissioner's action was not supported by a rule that had been promulgated by the Department of Revenue. The existence of a Department of Revenue rule, however, could not have validated an action by the Commissioner that was contrary to statutory provisions. As the Court held in *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d 850 (Tenn.1985),

If the rules and regulations promulgated by the Commissioner of Revenue are inconsistent with the statute, then they are void.

*Id.* at 853.

. . . .

. . . "We think it evident that the Legislature intended net operating losses for the purpose of the carryover provision to reflect actual economic losses."

*Southern Railway Co.,* 812 S.W.2d at 579.

On June 20, 1991, ten days after the announcement of *Southern Railway v. Taylor,* the legislature enacted Chapter 503 Public Acts of 1991, including Section 7 which added an additional provision to T.C.A. § 67–4–805(b)(2)(C) as follows:

(ii) There shall be added to the net loss as determined for excise tax purposes, all nonbusiness earnings, all interest, dividends excluded from net earnings pursuant to Section 67–4–805 and any other income excluded from net earnings pursuant to Section 67–4–805.

In reliance upon *Southern Railway v. Taylor*, InSouth filed a combined 1991 return which included "carry-over losses" from previous years, but did not "add to the net loss," dividends received in previous years from subsidiaries. The defendant required such dividends to be "added" (which really results in a reduction of loss and increase of tax). InSouth paid the increased assessment under protest, and this suit seeks a refund of the increase.

As indicated in the statement of the issues, above, appellant presents to this Court five reasons why it was error for the Trial Court to deny relief.

■ The 1990 and 1991 amendments to T.C.A. Title 67, Chapter 4 were made for the purpose of obtaining the payment of a fair share of corporate taxes from interstate financial conglomerates which otherwise would be able to "shift" profits and losses to report taxable profits in states having the lowest tax rate.

Section 7 of Chapter 37 of the 1991 Act, quoted above, specifically provides that:

Dividends and receipts between members of a unitary group shall be excluded from the return.

As stated in *Southern Railway v. Taylor*, the basis of Tennessee Corporate Income Tax is "net earnings," which is "gross income minus allowable deductions; dividends received from an 80% owned subsidiary are not income to the parent because the worth of the subsidiary is reduced by the payment of the dividend; it is simply a transfer of assets from one member of the unitary group to another member without any resulting profit to the group." (Non-unitary interstate groups could use this device to "shift profits to a low tax state.")

The provision of Section 7 of Chapter 503 of the 1991 Acts, quoted above, if applied literally is in direct contradiction of the general intent of the tax law to tax income, because "adding" "non-income dividends" results in taxing a non-existent income. Moreover, such an application of Section 7 results in a direct contradiction of Section 7 of Chapter 37, quoted above, that:

Dividends from members of a unitary group shall be excluded from the return.

■ In statutory construction, it is the duty of the Court to endeavor to avoid a construction that will place one statute in conflict with another. *Parkridge Hospital, Inc. v. Woods*, Tenn.1978, 561 S.W.2d 754.

The words "shall be excluded from the return" should take precedence over the ambiguous words, "excluded dividends shall be *added* to the net loss." *Bible & Godwin Construction Co. v. Faener Corp.*, Tenn.1974, 504 S.W.2d 370; *Laymance v. Vaughn*, Tenn. App.1993, 857 S.W.2d 36.

This Court finds that the Legislature did not intend to repeal Section 7 of Chapter 37, above, or to tax a non-income transfer in contradiction of the definition of "Net Earnings" stated in T.C.A. § 67–4–805(a)(1).

*-Double Taxation-*

■ In the absence of express verbiage plainly indicating an intent to "double tax" the same business is not to be taxed twice for the exercise of the same privilege. *Commercial Standard Ins. Co. v. Hixson*, 175 Tenn. 239, 133 S.W.2d 493 (1939).

To interpret the statute as insisted by the Commissioner would result in double taxation for which no intent is expressed in the statute.

■ Also, to follow the Commissioner's interpretation would result in retroactive application of the 1991 amendment by requiring unitary groups to recalculate their earnings, ergo taxes for years previous to the enactment of the Act. It is the duty of the courts to construe a statute against retroactive application. *Westland Drive Service v. Citizens and Southern Realty Inv.*, Tenn.App. 1977, 558 S.W.2d 439.

In presenting Chapter 503 of the 1991 Acts to the Senate for passage, Senator Dunavant

gave an extended explanation of its purpose to require foreign financial institutions to pay their fair tax on earnings produced in Tennessee, and concluded:

> ... This provision is necessary to prevent tax avoidance created by corporations shifting assets out of a Tennessee financial institution into another affiliate financial institution in another state. Under this bill, receipts are attributable to the state in which [they] are earned. In other words, if a payment is made by a Tennessean on a loan, it's earned in Tennessee. That's, that's the basis of the bill. ... We just were seeking fairness. ....

This record shows that each of the plaintiffs is a Tennessee Corporation, doing business only in Tennessee and paying taxes to Tennessee on all of its operations. Whatever legitimate application T.C.A. § 67–04–805(b)(2)(C)(ii) may have to other types of businesses, this Court concludes that it has no application to financial institutions which report all income and pay all state income taxes to Tennessee.

For the reasons stated, the judgment of the Trial Court is reversed and vacated, and the cause is remanded to the Trial Court for further proceedings consistent with this opinion, including ascertainment and judgment for the amount due the plaintiff, InSouth. Costs of this appeal will be paid by the appellee.

Reversed and Remanded.

CANTRELL, J., concurs.

LEWIS, J., not participating.